**2016 BNH 010  Note:   This is an unreported opinion.  Refer to LBR 1050-1 regarding citation.**

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW HAMPSHIRE

|  |  |
|---|---|
| In re: | Bk. No. 15-10250-JMD |
|  | Chapter 7 |
| Edward T. Stewart, Jr., |  |
|     Debtor |  |
|  |  |
| Sheila DeWitt & |  |
| Joseph DeWitt, |  |
|     Plaintiffs |  |
|  |  |
| v. | Adv. No. 15-1032-JMD |
|  |  |
| Edward T. Stewart, Jr., |  |
|     Defendant |  |

| | |
|---|---|
| *Daniel M. Deschenes, Esq.* | *Nancy H. Michels, Esq.* |
| *Hinckley, Allen & Snyder LLP* | *Parnell, Michels & McKay, PLLC* |
| *Concord, NH* | *Londonderry, NH* |
| *Attorney for the Plaintiffs* | *Attorney for the Defendant* |

## MEMORANDUM OPINION

### I.  INTRODUCTION

Before the Court is defendant-debtor Edward Stewart's (the "Debtor") Motion for Summary Judgment on Counts IX and X of the First Amended Complaint (Doc. No. 31) (the "Motion").  The plaintiffs, Sheila and Joseph DeWitt (the "Plaintiffs" or "Mr. & Ms. DeWitt") have opposed the Motion (Doc. No. 37).  The Debtor is a general contractor, who previously owned and operated his home remodeling business through Boardwalk North, a corporation, also in chapter 7 bankruptcy.  Prepetition, in March 2013, the Plaintiffs engaged the Debtor to

remodel their home, after vetting the suitability of a number of other contractors. During this vetting process, the Debtor made certain representations to the Plaintiffs regarding his and Boardwalk North's ability to perform the necessary work. The Plaintiffs assert that these representations resulted in their selecting the Debtor and Boardwalk North over the other contractors. By the next summer the parties' relationship had soured, and the Debtor and Boardwalk North ceased work on the Plaintiffs' home. The Plaintiffs hired a new contractor to complete the job, at an alleged additional cost of about $700,000. Soon after, the Plaintiffs sued the Debtor in state court, and the Debtor filed a bankruptcy petition.

In this adversary proceeding, the Plaintiffs have brought a number of claims against the Debtor, including claims for fraud, piercing the corporate veil, seeking to except the Debtor's debt to them from discharge pursuant to 11 U.S.C. § 523, and seeking to deny the Debtor's discharge under § 727.[1] The central dispute in this proceeding involves the representations the Debtor made to the Plaintiffs at the time they selected him to perform the remodeling work on their home. Of the thirteen counts of the complaint, only two are relevant to the Motion. In Count IX, the Plaintiffs seek to except their claims against the Debtor from discharge under § 523(a)(2)(B), asserting that the Debtor misrepresented his financial condition to them in various emails. Count X involves allegations that the Debtor breached a fiduciary duty owed to the Plaintiffs by misusing the advance payments the Plaintiffs made on the construction contract—rendering the debt nondischargeable pursuant to § 523(a)(4). The Court held a hearing on the Motion, heard the parties' arguments, and took the matter under advisement.

This Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§

---

[1] All further references to "section," "§," "Code," or "Bankruptcy Code" are references to title 11 of the United States Code, unless otherwise indicated.

1334 and 157(a) and Local Rule 77.4(a) of the United States District Court for the District of New Hampshire. This is a core proceeding in accordance with 28 U.S.C. § 157(b).

## II. FACTS

The summary judgment record in this case contains a narrow range of undisputed, material facts.

### Material Facts Relating to Count IX

Count IX relates to a pair of emails that the Debtor sent the Plaintiffs. The first was sent in March 2013 during the period in which the Plaintiffs were vetting various contractors, including the Debtor, to determine whom to hire. In response to Sheila DeWitt's email asking— "[w]hat were your annual revenues and number of jobs for 2011 and 2012 (separated by year)?"—the Debtor answered:

> Our revenue for 2011, was approx. 2.3m and for 2012, was approx. 1.7m… the recession appears to be cooling down….our revenues through the end of March, this year, are: 1.2m

Motion, Ex. 3 (errors in original). In the same email, Ms. DeWitt also asked the Debtor, "[w]hat are your revenue projections for 2013 (without DeWitt project)?", and in response the Debtor wrote:

> We projected our revenue based upon historical data will exceed 2.4m and based upon the results to date may may need to be adjusted to 2.9m, this year , (without your project) .

Motion, Ex. 3 (errors in original). DeWitt also asked the Debtor a number of other questions including what the range of job costs was in 2011 and 2012, what the estimated appraisal values of homes that the Debtor worked on, about the awards that Boardwalk North had won, and about alternative ideas for the DeWitts's proposed project.

3

The Debtor sent the second relevant email in June 2014, during the weeks shortly before he and Boardwalk North ceased working on the Plaintiffs' project. This email came just after the Debtor had met with the Plaintiffs to discuss a mechanics lien that a subcontractor had asserted against the DeWitt's home. In the email the Debtor stated:

> Hello Joe and Sheila…I am happy to report that we have resolved our financial issues and you can expect us to move for accordingly, averting the need for any stop gap measures…we sincerely apologize for any unintended consequences as a result of our last meeting and look forward to bring your project to a close as planned…

Motion, Ex. 2 (errors in original).

Material Facts Relating to Count X

In Count X, the Plaintiffs claim that the Debtor breached a fiduciary duty he owed to them, imposed either because the Plaintiffs and Debtor agreed that he would hold all of the payments the Plaintiffs made to him in trust or because state law imposes a fiduciary duty on contractors holding client funds in this type of scenario.

The Plaintiffs base these claims on two pieces of evidence. First, they base it on Ms. DeWitt's proposed testimony, contained in her affidavit (Doc. No. 37, attachment No. 3, DeWitt Aff.) (the "Affidavit").[1] In the Affidavit, DeWitt states:

> Stewart informed us that advance deposits were required to provide funding for materials and subcontractors to be utilized on our project. We trusted that Stewart would use our money for this purpose. Stewart personally represented to us that the advance deposits would be used to negotiate the best possible prices with subcontractors and would save us substantial sums of money. Stewart repeatedly told us that the "Start of Milestone" payment schedule allowed him to "leverage"

---

[1] The Plaintiffs' exhibits do not contain any numbering on the actual documents themselves, rather they are separately attached to the Plaintiffs' objection to the Motion on the Court's docket. Yet, the Plaintiffs in their response refer to various exhibits by number. The exhibits are numbered according to which supporting affidavit they are attached. The Plaintiffs filed two supporting affidavits with their objection to the Motion, the DeWitt Affidavit (which the Court simply refers to as the "Affidavit") and the Pasakarnis Affidavit, which the Court does not refer to in this opinion.

4

> our money on the project, in part due to the excellent relationships he maintained with subcontractors.

Affidavit, ¶ 12.  The Plaintiffs claim that rather than using these "advance deposits" for the project, the Debtor used them to pay for debts unrelated to the project.  The actual payments are listed in the "Payment Schedule," Affidavit, Ex. 4, p. 23-25, under a column with the heading, "Terms."

In addition to the Affidavit, the Plaintiffs point to the parties' contract as evidence that a fiduciary relationship existed.  Specifically, ¶ 23 of the "Terms and Conditions" section of the contract[2] states:

> **Payment of Invoice:** We shall pay all valid bills and charges for material and labor authorized by us arising out of the construction of the structure and will hold the Owner of the property free and harmless against any liens and claims of lien of labor and material filed against the property.

Affidavit, Ex. 4, p. 27, ¶ 23.

## III.  DISCUSSION

The Court will first address the standard according to which it must judge the Motion. Then it will address the substantive legal issues pertaining to Counts IX and X of the complaint.

---

[2] In reviewing the summary judgment record, it became clear to the Court that there is no one "contract" in this case. Rather, there is a ten-page "Design Fee Purchase Agreement" (Affidavit Ex. 3).  Additionally, Affidavit, Ex. 4, referred to on the docket as the "Contract and Payment Schedule," contains twenty-seven pages of discrete documents, including the following:
1. a one-page "Change Order" (p. 1);
2. a seventeen-page document entitled "DeWitt Proposal Features" (p. 2-18);
3. four un-paginated, yet consecutive pages of documents entitled "Customer's Product Selection Schedule" (p. 19-22);
4. three un-paginated, consecutive pages of documents entitled "Payment Schedule" (p. 23-25);
5. a one-page document entitled "Purchase Agreement" (p. 26) (which refers to the "DeWitt Proposal Features" document, albeit as a sixteen-page document, not a seventeen-page one;
6. and, finally, a one-page document entitled "Terms and Conditions (p. 27) (quoted supra), which is un-paginated and not explicitly connected to any of the other documents in Affidavit, Ex. 4.

There is nothing in the summary judgment record that indicates how these contractual pieces fit together; the parties did not raise this issue in their briefs or at oral argument.

In bankruptcy, summary judgment is governed by Federal Rule of Bankruptcy Procedure 7056, which applies Federal Rule of Civil Procedure 56 to adversary proceedings.  Rule 56(a) provides that a movant is entitled to summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "Genuine issues of fact are those that a factfinder could resolve in favor of the nonmovant, while material facts are those whose 'existence or nonexistence has the potential to change the outcome of the suit.'"  Green Mountain Realty Corp. v. Leonard, 750 F.3d 30, 38 (1st Cir. 2014) (quoting Tropigas de Puerto Rico, Inc. v. Certain Underwriters at Lloyd's of London, 637 F.3d 53, 56 (1st Cir. 2011)).

In assessing the summary judgment record, a court must draw all reasonable inferences in favor of the non-moving party but is "not obliged to accept as true or to deem as a disputed material fact, each and every unsupported, subjective, conclusory, or imaginative statement made to the [c]ourt by a party."  Torrech-Hernandez v. Gen. Elec. Co., 519 F.3d 41, 47 (1st Cir. 2008).  "With respect to issues on which the non-movant would bear the burden of proof at trial, the non-movant … must adduce sufficient evidence to permit the trier of fact to resolve that issue in his favor. …  If the non-movant fails to make the required showing on such an issue and the issue is a dispositive one, summary judgment is appropriate."  Harrington v. Simmons (In re Simmons), 810 F.3d 852, 857 (1st Cir. 2016).

1.      11 U.S.C. § 523(a)(2)(B)

Section 523(a) of the Bankruptcy Code excepts certain types of debt from discharge.  Specifically, § 523(a)(2)(B) provides that debts

> for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

* * *

(B) use of a statement in writing—

    (i) that is materially false;

    (ii) respecting the debtor's or an insider's financial condition;

    (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and

    (iv) that the debtor caused to be made or published with intent to deceive

are not dischargeable. 11 U.S.C. § 523(a)(2)(B). The creditor seeking to except a debt from discharge under this section must prove several elements by a preponderance of the evidence:

> (1) the debtor made a statement in writing; (2) the statement concerned the debtor's or an insider's financial condition; (3) the statement was materially false; (4) the creditor actually and reasonably relied on this false statement; and (5) the debtor made the false statement with the intent to deceive the creditor.

Douglas v. Kosinski (In re Kosinski), 424 B.R. 599, 608 (B.A.P. 1st Cir. 2010) (citing Palmacci v. Umpierrez, 121 F.3d 781, 786 (1st Cir. 1997)). Additionally, the Court must be mindful that "exceptions to discharge are narrowly construed in furtherance of the Bankruptcy Code's fresh start policy." Palmacci, 121 F.3d at 786. In the Motion, the Debtor argues that his answers to Ms. DeWitts's questions in the March 2013 email and his statement that Boardwalk North's financial difficulties were "resolved" in the June 2014 email are not statements concerning his financial condition within the meaning of the statute. The DeWitts conversely argue that the statements fall within the statutory definition.

This Court generally follows the narrower of two approaches to the meaning of "respecting the debtor's or an insider's financial condition." See Greene v. Shaw (In re Shaw), 2016 BNH 006, 13. The Bankruptcy Appellate Panel in Kosinski summarized these two approaches:

> [C]ourts have disagreed over whether to interpret the phrase broadly to include any statement that has a bearing on the financial position of the debtor or an insider, or narrowly so as to include only statements providing information as to a debtor's net worth, overall financial health, or an equation of assets and liabilities.

In re Kosinski, 424 B.R. at 608-09 (footnotes omitted).  The DeWitts argue that the March 2013 email is a statement concerning the Debtor's overall financial health.  The Court disagrees.  The March 2013 email contains one sentence in which the Debtor summarizes the revenue numbers for Boardwalk North for 2011, 2012, and 2013 through March of that year.  The email contains another sentence in which the Debtor discusses a revenue projection for the balance of 2013.  The information contained in the March 2013 email is insufficiently detailed to be a statement concerning the Debtor's overall financial health.  The Debtor provided no supporting information for his statements in the March 2013 email.  For example, it is unclear whether the revenue number is before or after operating expenses; the Court is uncertain whether the numbers reflect the actual profitability of the company or whether they simply reflect the gross revenue before considering any losses.  This is not a question of material fact.  This information is simply lacking from the written statement itself.  Accordingly, the Court finds that the March 2013 email is not a statement respecting financial condition.

The Plaintiffs cite Midwest Cmty. Fed. Credit Union v. Sharp, 357 B.R. 760, 763-64 (Bankr. N.D. Ohio 2007), to support the proposition that a statement concerning a Debtor's income, if sufficiently detailed, can be a statement of overall financial condition.  In Sharp, the debtor provided a creditor with a loan application containing a detailed recitation of all sources of the debtor's income.  Sharp, 357 B.R. at 763-64.  To the Court, Sharp effectively illustrates what the Plaintiffs' case lacks.  The Debtor's statements in the March 2013 email lack the detail

8

that persuaded the Sharp court. The Debtor referred to aggregate revenue numbers and did not say anything about the source of that revenue.

The Plaintiffs also urge the Court to consider the purpose of the Debtor's statements in the March 2013 email, arguing that the purpose of the written statement can make it a statement of financial condition. This argument does not persuade the Court. The purpose of the Debtor's email to Ms. DeWitt was to answer six questions she had asked him in prior email. Only two of the questions relate to the Debtor's financial situation. The rest are either about the DeWitt's specific project proposal or other projects that the Debtor worked on. Accordingly, it appears that the purpose of the email was to obtain general information about the Debtor's business, rather than gain a detailed picture about the business's financial health.

The Plaintiffs do not mention the June 2014 email in their opposition to the Motion. The Debtor argues that this email contains no information respecting the Debtor's financial condition because it is simply a general statement that "financial issues" have been "resolved." The Court agrees. This email is substantially less detailed that the March 2013 emails. It contains no numerical information, only a vague statement that undefined "issues" are no longer ongoing. The June 2014 email is not a statement of financial condition.

Given that the Plaintiffs have failed to provide sufficient evidence on an essential element of their case on which they have the burden of proof—whether the written statements they point to are statements "respecting the debtor's or an insider's financial condition"—the Court must enter summary judgment in favor of the Debtor on Count IX.

    2.    <u>11 U.S.C. § 523(a)(4)</u>

Section 523(a)(4) excepts debts from discharge if those debts are "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4). The meaning of "fiduciary capacity" requires the existence of an express or technical trust. <u>Weaver v. Weston (In re Weston)</u>, 307 B.R. 340, 343 (Bankr. D.N.H. 2004). Express trusts include "an explicit declaration of trust, a clearly defined trust res, and an intent to create a trust relationship." <u>Raso v. Fahey (In re Fahey)</u>, 482 B.R. 678, 687-88 (B.A.P. 1st Cir. 2012) (quotation omitted). In New Hampshire, while no "technical language" or "formalities" are required to create an express trust, the requisite intent must still be present. <u>Askenaizer v. Seacoast Redimix Concrete, LLC (In re Charwill Constr., Inc.)</u>, 391 B.R. 7, 13 (Bankr. D.N.H. 2007) (citing <u>Trustees of Pembroke Acad. v. Epsom School Dist.</u>, 75 N.H. 408 (1910)). Technical trusts are created by statute or common law. <u>Fahey</u>, 482 B.R. at 688. In New Hampshire, no "statute provides for the automatic creation of a trust for construction project proceeds." <u>Charwill</u>, 391 B.R. at 13. Additionally, the same evidentiary burdens hold under § 523(a)(4) as under § 523(a)(2)(B).

The Plaintiffs argue that the language of the contract documents—establishing a payment in advance scheme, with the payments occurring at the onset of certain phases of the project, <u>see</u> DeWitt Aff., Ex. 4 at 23-25—combined with the Debtor's assurance that by paying in advance the DeWitts would get the best price on subcontractor services, effectively either created an express or technical trust relationship under state law. Additionally, in the Affidavit, Ms. DeWitt stated that she "trusted" that the Debtor would use the advance payments on the project, and not for some other purpose.

The Court finds this evidence insufficient to show that an express trust was created. There is simply no evidence that the Plaintiffs and Debtor intended that the Debtor would act as a trustee over a clearly defined trust res—saying that the Plaintiffs "trusted" the Debtor to use advance payments so that he could complete the work on their house is not sufficient to demonstrate the existence of an express trust. This statement is too vague to demonstrate the required level of intent. The contractual documents also fail to establish the existence of a trust relationship. It appears from the documents as if the parties contemplated a pay-in-advance scheme. There is no language that required the Debtor to hold the payments in a separate account or even to use the payments for a specific purpose. Finally, there is nothing in the documents that indicates the Plaintiffs retained an ownership interest in the payments after they were made to the Debtor. There is also no evidence of the existence of a technical trust. In New Hampshire, such a trust would have to arise under the common law, and the Plaintiffs cite to no case or legal principal that would avail them under these circumstances. Nor is the Court aware of any. Accordingly, the Court finds that no express or technical trust existed, based on the summary judgment record.

In their response to the Motion, the Plaintiffs argued that the embezzlement provision of § 523(a)(4) applies. It is unclear to the Court, however, whether the Plaintiffs even pleaded embezzlement as part of their § 523(a)(4) claim. The Debtor did not address this part of the statute in the Motion, but did present an argument on § 523(a)(4) at the hearing on the Motion. Even assuming, however, that the Plaintiffs properly pleaded this cause of action, the summary judgment record does not support an embezzlement theory. The reason is simple. Embezzlement requires a debtor to hold lawful possession of property belonging to another

11

party.  See Sherman v. Potapov (In re Sherman), 603 F.3d 11, 12 (1st Cir. 2010).  There is no evidence that the advance payments were still the Plaintiffs' property after they were paid over to the Debtor.  Summary judgment for the Debtor is appropriate on Count X.

**IV. CONCLUSION**

For all these reasons, the Court finds that there exist no disputed issues of material fact in the summary judgment record and that the Plaintiffs have failed to present sufficient evidence to support the causes of action set out in Counts IX and X of their complaint.  Accordingly, the Court must grant summary judgment to the Debtor on those counts.  This opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.  The Court will issue a separate order consistent with this opinion.

ENTERED at Manchester, New Hampshire.


Date:  8/18/2016                    /s/ J. Michael Deasy
                                    J. Michael Deasy
                                    Bankruptcy Judge